UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JULIO ISLEY SMITH,

                            Plaintiff,                9:25-CV-0765
                                            (BKS/MJK)

      v.

JOHN DOE #1, et al.,

                            Defendants.

---

APPEARANCES:

JULIO ISLEY SMITH
Plaintiff, pro se
99-A-6505
Eastern NY Correctional Facility
Box 338
Napanoch, NY 12458

BRENDA K. SANNES
Chief United States District Judge

## DECISION AND ORDER

## I.     INTRODUCTION

On June 16, 2025, pro se plaintiff Julio Isley Smith ("plaintiff") commenced this action by submitting a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), with an application to proceed in forma pauperis ("IFP").[1]  Dkt. No. 1 ("Compl."); Dkt. No. 5 ("IFP Application"). The complaint asserted claims related to plaintiff's confinement in the custody of the New

---

[1] Four additional plaintiffs were listed in the caption of the complaint.  *See* Dkt. No. 1.  In a Decision and Order filed on July 29, 2025 (the "July 2025 Order"), the Court advised plaintiffs that for the case to proceed, each plaintiff must pay the statutory filing fee in full or submit an IFP application. Dkt. No. 4.  The  four additional plaintiffs failed to comply with the July 2025 Order or communicate with the Court in any manner.  Thus, they were dismissed as plaintiffs.  *See* Dkt. No. 8 at 3.

York State Department of Corrections and Community Supervision ("DOCCS") at Eastern Correctional Facility ("Eastern C.F."). *See generally* Compl.

By Decision and Order filed on November 5, 2025 (the "November 2025 Order"), this Court granted plaintiff's IFP Application and reviewed the sufficiency of the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Dkt. No. 8. On the basis of that review, the Court dismissed plaintiff's complaint for failure to state a claim. *Id.* In light of plaintiff's pro se status, the Court provided plaintiff with an opportunity to amend his complaint. *Id.*

On May 20, 2026, plaintiff filed an amended complaint.[2] Dkt. No. 17 ("Am. Compl.").

## II.    SUFFICIENCY OF AMENDED COMPLAINT

### A.  Legal Standard

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A was discussed at length in the November 2025 Order and will not be restated in this Decision and Order. *See* Dkt. No. 8 at 4-5.

### B.  Summary of Amended Complaint

With the amended complaint, plaintiff identifies the following new defendants: Sergeant Lisa Wilson ("Wilson"), Sergeant Darren W. Klein ("Klein"), Sergeant Brooke Tippit ("Tippit"), Lieutenant Robert D. Cusak ("Cusak"), and Deputy Superintendent Lisa Anderson ("Anderson").[3] *See generally* Am. Compl. The amended complaint does not include any

---

[2] Plaintiff entitled his submission "Second Amended Complaint," *see* Dkt. No. 17 at 1, however, the submission is the first amended complaint.

[3] The Clerk of the Court is directed to amend the Docket Report to include these defendants.

claims against the John Doe defendants named in the original complaint.[4]  *See id.*  The following facts are set forth as alleged by plaintiff in his amended complaint.

On or around February 17, 2025, plaintiff resided in Room 24, Cell Block South Hall, Company #9.  Am. Compl. at 3.  Plaintiff "approached" Wilson to ask why he was being escorted to breakfast at 10:30 a.m., and she responded, "talk to your company officer."  *Id*.  However, plaintiff was unable to speak to that officer because "no officer wanted to work in South Hall that morning."  *Id*.

"For the next days and weeks," due to a "wild cat strike," plaintiff was confined to his room for twenty-four hours each day without hot meals, hot water, recreation, religious services, and the right to participate in Ramadan.  Am. Compl. at 4.

Prior to the strike, plaintiff underwent diagnostic testing for "numerous ailments which just kept getting worse."  Am. Compl. at 4.  Plaintiff experienced "disturbing" problems with his respiratory system, feared dying in his sleep, and suffered "excruciating pain" from a "botched" hernia operation "which the facility was told needs further evaluation."  *Id*.  Plaintiff filed a grievance and was told that his treatment was delayed due to the strike.  *Id*.  "Almost immediately after filing grievances against them," "guards" would not provide hot meals for serval days.  *Id*.  Klein "repeatedly harassed" plaintiff in retaliation for "having to get involved with [plaintiff's] grievance interview."  Am. Compl. at 4.

In an attempt to "follow the chain of command," plaintiff brought "these concerns to every defendant mentioned in the complaint."  Am. Compl. at 5.

---

[4]  The Clerk of the Court is directed to amend the Docket Report to terminate these defendants.

Construing the amended complaint liberally[5], plaintiff alleges the following: (1) Eighth Amendment claims[6]; (2) First Amendment retaliation claims; and (2) state law claims. *See generally* Am. Compl. Plaintiff seeks monetary damages. *Id*. at 6.

## C. Analysis

### 1. Eighth Amendment Claims

The law related to Eighth Amendment claims was discussed in the November 2025 Order and will not be restated herein. *See* Dkt. No. 8 at 10-11. In the November 2025 Order, the Court noted that, even assuming plaintiff alleged facts that satisfied the objective prong of an Eighth Amendment analysis, "the complaint lacks facts indicating that defendants were personally involved or responsible for decisions related to plaintiff's religious practices or plaintiff's conditions of confinement." *Id*. at 11. Specifically, the Court noted

> With respect to plaintiff's claims against defendants John Doe Commissioner and John Doe Superintendent, "[l]iability based solely [. . .] due to a failure to supervise, without more, constitutes precisely the type of vicarious, respondeat superior liability that Iqbal and *Tangreti* eliminate." *Myers on behalf of Est. of Myers v. Davenport*, No. 1:21-CV-0922 (LEK/CFH), 2022 WL 3017367, at *4 (N.D.N.Y. July 29, 2022) (citation omitted). In this case, the complaint is devoid of any allegations which plausibly suggest that the Commissioner and Superintendent directly participated in any alleged constitutional violation or that they were present or otherwise involved in any constitutional violation. In the absence of some tangible connection between the Commissioner and Superintendent and any constitutional violations, the claims against

---

[5] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

[6] While plaintiff describes his claim as a "breach of duty to protect," affording plaintiff the special solicitude required, the Court has construed this cause of action as an Eighth Amendment claim related to plaintiff's conditions of confinement during the strike.

the Commissioner and Superintendent must be dismissed. *See O'Brien v. City of Syracuse*, No. 5:22-CV-948 (MAD/TWD), 2023 WL 6066036, at \*19 (N.D.N.Y. Sept. 18, 2023) (citing, *inter alia*, *Robinson v. Graham,* No. 20-CV-1610, 2021 WL 2358415, \*3 (N.D.N.Y. June 9, 2021) (dismissing claim against supervisor for failure to train and manage staff as "reminiscent of a 'supervisor liability' theory of liability for Section 1983 claims that is no longer available" after *Tangreti*), *reconsideration denied*, 2024 WL 4252052 (N.D.N.Y. Sept. 20, 2024).  Similarly, with respect to plaintiff's claims against Doe Employee and CO Doe, the complaint lacks any facts suggesting that defendants were personally involved in decisions related to plaintiff's religious practice and conditions of confinement. Indeed, plaintiff does not allege that defendants were present, or aware, of any alleged constitutional violations.  Moreover, plaintiff's sweeping and general allegations fail to sufficiently identify the specific involvement these defendants. Plaintiff claims "defendants [. . .] conspired to plan and execute an illegal strike" *see* Compl. at 3, without specifying which particular individual did what. "[P]laintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations." *5465 Route 212, LLC v. New York State Dep't of Transportation*, No. 1:19-CV-01510 (BKS/DJS), 2020 WL 6888052, at \*9 (N.D.N.Y. Nov. 24, 2020); *see also Lawson v. Ruskin*, No. 08-CV-321, 2008 WL 1902218, at \*2 (E.D.N.Y. Apr. 25, 2008) (explaining that "lumping all Defendants [. . .] together without specifying what actions were taken, and by whom, to violate his rights" was insufficient to meet pleading requirements) (citation omitted).

As discussed *supra*; to state a cognizable Section 1983 claim, a complaint must allege the personal involvement of each of the defendants. Additionally, Rule 8 of the Federal Rules of Civil Procedure mandates that a complaint include sufficient allegations to provide "each defendant fair notice of what the plaintiff's claim is and ground upon which it rests." *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001) (internal quotation marks omitted); *see Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). As presently plead, plaintiff's allegations are simply too vague to provide any sort of notice of a claim against any particular defendant.  *See Atuahene*, 10 Fed. App'x at 34 ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff]'s complaint failed to satisfy th[e] minimum standard [set forth in Rule 8].").

Dkt. No. 8 at 12-13.

With the amended pleading, plaintiff identified sergeants, a lieutenant, and Deputy Superintendent as defendants.  However, the pleading does not include any new or additional facts that remedy the deficiencies identified in the November 2025 Order.  Specifically, plaintiff has not alleged that any named defendant was personally involved in the strike, confined him to his cell, or withheld various services, medical treatment, or meals/water.  Plaintiff refers to "guards" and officers" but does not identify the "guards" or officers" as defendants, Doe or otherwise.  Instead, plaintiff attempts to impose § 1983 liability based upon defendants' supervisory positions.

While plaintiff identified Anderson as the Deputy Superintendent, plaintiff failed to plead facts suggesting that Anderson was personally involved in the alleged constitutional violation or facts from which Anderson could have drawn the inference that plaintiff was exposed to a substantial risk of harm.  Plaintiff does not allege that he informed Anderson of unusual or unsafe conditions, or that he personally interacted with Anderson in any manner.  While plaintiff claims that Anderson was "informed by other staff" of "said danger," the pleading does not include any information related to how she was informed, who informed her, when she was informed, or any facts to suggest that Anderson had any reason to believe that unconstitutional conditions were being imposed.  Thus, there are no facts from which to plausibly infer that Anderson was "subjectively aware of [a] risk" to plaintiff's health.

Further, while plaintiff claims that he brought his "concerns to every defendant mentioned in the complaint," *see* Am. Compl. at 5, the amended complaint lacks any facts related to when, where, or how plaintiff "brought" his concerns to defendants.  As noted in the November 2025 Order, plaintiff cannot "rely on a group pleading against all defendants

6

without making specific individual factual allegations." *See 5465 Route 212, LLC,* 2020 WL 6888052, at *9.

Finally, to the extent that plaintiff attempts to assert an Eighth Amendment claim against Klein based upon verbal harassment, that claim is dismissed. *See Johnson v. Eggersdorf,* 8 Fed. Appx. 140, 143 (2d Cir. 2001) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged"); *Shabazz v. Pico,* 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under . . . § 1983").

For the reasons set forth herein and in the November 2025 Order, plaintiff's Eighth Amendment claims are dismissed for failure to state a claim.

### 3. First Amendment – Retaliation

To state a claim of retaliation under the First Amendment, an inmate must allege facts plausibly suggesting "the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official — even those otherwise not rising to the level of a constitutional violation

7

— can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491.

The Second Circuit has defined "adverse action objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill*, 389 F.3d at 381 (cleaned up) (emphasis in original). The "objective test applies even where a particular plaintiff was not himself subjectively deterred" from exercising his rights. *Id.* "[S]ome verbal threats, even if not serious enough to implicate the Eighth Amendment, can constitute an adverse action." *Mateo v. Fischer*, 682 F.Supp.2d 423, 434 (S.D.N.Y. 2010); *Barrington v. New York*, 806 F.Supp.2d 730, 746 (S.D.N.Y. 2011) (holding that verbal threats may constitute adverse action for purpose of a First Amendment retaliation if the threat is sufficiently specific). Whether threats constitute adverse action in a particular case is dependent upon the specificity of the threat and the context in which it was made. *Compare Hepworth v. Suffolk Cnty.*, No. 02-CV-6473, 2006 WL 2844408, at *8-9 (E.D.N.Y. Sept. 29, 2006) (numerous verbal threats that inmate "would receive another beating or be killed" was enough evidence that a "reasonable jury could find that the officers unconstitutionally retaliated against" inmate) *with Bartley v. Collins*, No. 05-CV-10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (threats such as "we are going to get you, you better drop the suit," do not rise to the level of adverse action).

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001). While there is no "bright line . . . defin[ing] the outer limits" of the "temporal relationship," courts in the Second Circuit have held that an adverse action taken as much as eight months after the protected activity indicated a causal connection. *Grant v.*

*Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980); *but see Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's protected activity, was in response to it).

Here, plaintiff alleges that Klein harassed him for "having to get involved with [plaintiff's] grievance interview." Am. Compl. at 4. Even assuming plaintiff engaged in protected conduct when he filed a grievance, the amended complaint lacks facts suggesting that plaintiff suffered any adverse action that was causally connected to the protected activity. To wit, plaintiff has not provided facts related to when or where he was "harassed" or the sum and substance of the alleged harassment. Under such circumstances, the Court has no basis to plausibly infer that Klein's harassment was likely to deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. *See, e.g., Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) (holding that threatening statement, unaccompanied by any subsequent action, and which did not prevent inmate from filing additional grievances, was unlikely to deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights, and therefore did not constitute adverse action). Plaintiff's allegations of unspecified threats do not support a retaliation claim. *See, e.g., Bartley v. Collins*, No. 95 Civ. 10616, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action.").

Plaintiff also failed to provide the date, time, subject, or substance of the grievance that allegedly motivated Klein. Because the conclusory allegation that Klein retaliated is not supported by any facts that would allow the Court to assess whether Klein was motivated to retaliate against plaintiff, the claim must be dismissed. *See Faulk v. Fischer*, 545 Fed. App'x

9

56, 59 (2d Cir. 2013) (dismissing retaliation claim where the plaintiff failed to produce evidence suggesting that the defendants were "motivated by, or even aware of," his grievance); *see also Davidson v. Talbot,* No. 01-CV-473 (RFT), 2005 WL 928620, at *16 (N.D.N.Y. March 31, 2005) ("[the plaintiff] fails to allege when [ ] grievances were filed. Thus, from the outset, "th[e] Court had no way of assessing the strength or validity of such claims."); *see Williams v. Smith*, No. 9:11-CV-0601 (LEK/TWD), 2015 WL 1179339, at *10 (N.D.N.Y. Mar. 13, 2015) ("Adverse actions that predate protected conduct cannot form the basis of a retaliation claim.").

Further, to the extent that plaintiff attempts to assert a retaliation claim against "guards" who refused to "provide hot meals for serval days," that claim is dismissed as wholly conclusory.  As noted *supra*, plaintiff has not identified the "guards" as defendants.

For the reasons set forth herein, the retaliation claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.

### 4.  State Law Claims

Plaintiff claims that defendants violated the New York State Civil Service Law when they engaged in a strike.  *See* Am. Compl. at 5.  District courts have supplemental jurisdiction over all state law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution.  28 U.S.C. § 1367(a) (2000).  Here, the state law claims are parallel to plaintiff's federal claims.  Because plaintiff's federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Valencia v. Sung M. Lee*, 316 F.3d 299, 306 (2d Cir. 2003).

Ordinarily, a court should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704–05 (2d Cir.1991); see also Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires.").

An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); s*ee also Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *accord, Brown v. Peters,* No. 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997).

In this instance, plaintiff has already been provided one opportunity to amend his complaint. The deficiencies with his original complaint, identified by the court in the November 2025 Order, have not been cured with the amended complaint. Accordingly, the Court finds that any further amendment would be futile.

## III.    CONCLUSION

**WHEREFORE, it is hereby**

**ORDERED** that the amended complaint (Dkt. No. 17) is **ACCEPTED** for filing and is the operative pleading in this action; and it is further

11

**ORDERED** that the Clerk of the Court shall amend the Docket Report consistent with this Decision and Order; and it is further

**ORDERED** that the amended complaint (Dkt. No. 17) is **DISMISSED** in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that the Clerk provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk shall enter judgment accordingly; and it is further

**ORDERED** that the Clerk is directed to serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of Practice.

Dated: June 12, 2026

Brenda K. Sannes
Chief U.S. District Judge